UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AMANDA B., : | |
|     Plaintiff, : | |
| : | |
| v. : | C.A. No. 21-308MSM |
| : | |
| KILOLO KIJAKAZI, : | |
| Acting Commissioner of Social Security, : | |
|     Defendant. : | |

### REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff Amanda B. ("Plaintiff"), a college-educated "younger individual," stopped working as a medical laboratory technician shortly before undergoing spinal fusion surgery on February 9, 2018. Following the surgery, her treating provider noted "no significant abnormalities on any imaging obtained post operatively including MRI and multiple x-rays." Tr. 270. Yet, while Plaintiff's leg pain resolved, she continued to complain of severe pain in the lower back, as well as attention deficit disorder ("ADD"), depression and anxiety. Based on these impairments, she applied for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act") on May 14, 2019.

Now pending before the Court is Plaintiff's motion for reversal of the decision of the Commissioner of Social Security ("Commissioner") denying her claim. In support of her motion, Plaintiff contends: (1) the administrative law judge ("ALJ") deviated from the requirements of Avery v. Secretary of Health and Human Services, 797 F.2d 19, 28-29 (1st Cir. 1986), by erroneously considering Plaintiff's subjective claims of chronic pain with extreme insistence on objective findings; and (2) the ALJ committed error by failing to consider the supportability and consistency of the opinions of Plaintiff's treating physicians, particularly her

1

treating psychiatrist, Dr. Walter Fitzhugh. Defendant Kilolo Kijakazi ("Defendant") has filed a counter motion for an order affirming the Commissioner's decision.

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the

Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).

## II.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Fifth, if a claimant's impairments (considering RFC,[1] age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  The claimant bears the burden of proof at Steps One through Four, but it shifts to the Commissioner at Step Five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003).

---

[1] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

B.     **Opinion Evidence**

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.  A "medical opinion" for these purposes is defined by 20 C.F.R. § 404.1513(a)(2), which provides:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 381, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019).  Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to

Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859.  "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Id. at 5854.

**C.     Pain**

"Pain can constitute a significant non-exertional impairment."  Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1999).  Congress has determined that a claimant will not be considered disabled unless medical and other evidence (e.g., medical signs and laboratory findings) is furnished showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  To comply with this requirement, an ALJ must consider a claimant's statements about pain and determine the extent to which they are reasonably consistent with the objective medical evidence, but also may not disregard them "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms."  SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017); 20 C.F.R. § 404.1529(c)(3).

In this Circuit, the guidance regarding how to analyze subjective statements of pain in SSR 16-3p and 20 C.F.R. § 404.1529(c)(3) derives from the six-factor pain analysis adopted by Avery, 797 F.2d at 28-29, commonly called the "Avery factors."  Newman v. Saul, 474 F. Supp. 3d 345, 366 (D. Mass. 2020) (factors for pain analysis in SSR 16-3P "are often referred to as the 'Avery' factors after a case that codified them"); Martin v. Berryhill, No. 18-CV-461-JL, 2019 WL 1987049, at *5 (D.N.H. May 6, 2019) ("The factors to which SSR 16-3p refers are set forth in 20 C.F.R. § 404.1529(c)(3), and are sometimes called the Avery factors").  As reflected in SSR 16-3p and 20 C.F.R. § 404.1529(c)(3), when subjective allegations of pain are not substantiated by objective impairment-related symptoms, the Avery factors require examination

of considerations capable of substantiating subjective complaints of pain including: (1) daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication taken to alleviate the pain or other symptoms; (5) treatment, other than medication, received for relief of pain; (6) any other measures used to relieve pain or other symptoms; and (7) any other factors relating to the claimant's functional limitations and restrictions attributable to pain. Cookson v. Colvin, 111 F. Supp. 3d 142, 154 (D.R.I. 2015). Although the law is clear that an individual's statements as to pain are not conclusive of disability, 42 U.S.C. § 423(d)(5)(A), remand is required if the ALJ fails to perform this analysis as long as the claimant has sustained her burden of presenting a competent treating source opinion endorsing both the diagnosis of an impairment that causes subjective pain, as well as function-limiting pain. Tegan S. v. Saul, 546 F. Supp. 3d 162, 171 (D.R.I. 2021). That is, hearing officers are "not free to discount pain complaints simply because the alleged severity thereof is not corroborated by objective medical findings." Carbone v. Sullivan, No. 91-1964, 960 F.2d 143, 1992 WL 75143, at *5 (1st Cir. April 14, 1992) (per curiam); see Carlos N. v. Kijakazi, No. CV 20-398-MSM-PAS, 2021 WL 5231949, at *8-9 (D.R.I. Nov. 10, 2021), adopted, 2022 WL 103322 (D.R.I. Jan. 11, 2022). An ALJ's "extreme insistence on objective medical findings to corroborate subjective testimony of limitation of function because of pain" is error. Dianne D. v. Berryhill, No. CV 18-312JJM, 2019 WL 2521840, at *7 (D.R.I. June 19, 2019) (quoting Avery, 797 F. 2d at 22).

### III. Analysis

    **A.**     **Plaintiff's Challenge to ALJ's Approach to Subjective Claims of Pain**

Expressly citing to 20 C.F.R. § 404.1529(c)(3) and SSR 16-3p,[2] Tr. 16, the ALJ's decision is laser-focused on Plaintiff's allegations of extreme back pain despite the lack of objective medical findings to corroborate the claimed intensity and severity. The decision accurately summarizes and considers Plaintiff's subjective statements regarding the impact of pain on both her physical exertional ability, such as to sit, walk or lift, and her mental capacity to interact with others, adapt, concentrate and perform more than simple repetitive tasks. Tr. 16. It appropriately recites the contrast between the objectively normal to modestly abnormal findings on examination and her allegations regarding the frequency, intensity and duration of the pain she had been experiencing. Tr. 17. It accurately contrasts her claim of medication side effects during the hearing with her repeated report of no significant side effects to the treating providers responsible for managing that medication. Tr. 18. It lays out the many treatment modalities deployed by various providers (including physical therapy, injections and branch blocks), none of which (as Plaintiff alleges) was efficacious. Tr. 17. And it relies heavily on the persuasive (as the ALJ found) and unchallenged (by Plaintiff) administrative findings of the two physicians and two psychologists who reviewed the file initially and on reconsideration.

These experts' analyses and findings are contained in the Disability Determination Explanations ("DDEs") of record. Tr. 61-67, 70-77. As the DDEs make clear, the four non-examining experts found that Plaintiff has a medically determinable impairment that would reasonably be expected to produce pain, but also that the records reflect, *inter alia*, "excellent progress, including DC [discontinue] cane, resumption of walking and return to gardening." Tr.

---

[2] On Reply, Plaintiff argues that the ALJ's compliance (which she appears to concede) with 20 C.F.R. § 404.1529(c)(3) and SSR 16-3p is not enough because Avery contains additional factors that "are dispositive in the current claim." ECF No. 15 at 1. However, she fails to recite what those additional factors might be. This argument makes no sense. The factors listed in 20 C.F.R. § 404.1529(c)(3)(i-vii) and SSR 16-3p are a verbatim replication of what this Court has summarized as constituting the Avery factors. E.g., Cookson, 111 F. Supp. 3d at 154; see Newman, 474 F. Supp. 3d at 366; Martin, 2019 WL 1987049, at *5.

62, 65, 75. Their analyses take note of the chronic nature of the pain and carefully consider the impact of pain on Plaintiff's strength, range of motion, activities of daily living, mood and ability to concentrate and interact socially. Tr. 62, 64, 65, 66, 75, 76. They evaluate Plaintiff's subjective claims, medications and other treatments for pain. Tr. 65, 75. And, despite the lack of significant objective signs and symptoms, these experts ultimately assessed significant functional limitations based on their findings that the pain was real and significantly impacted Plaintiff's ability to function, both physically and mentally. Tr. 61-67, 70-77. Thus, far from "'an extreme insistence on objective medical findings,'" Dianne D., 2019 WL 2521840, at *5 (quoting Avery, 797 F.2d at 21), the non-examining experts engaged in an appropriately nuanced analysis of Plaintiff's subjective statements regarding pain despite the lack of corroboration by objective medical findings.

      Based on his survey of the evidence, including his resolution of evidentiary conflicts, and in reliance on the RFC findings of these four non-examining experts as reflected in the DDEs, the ALJ found that Plaintiff is extremely limited by pain, both physically and mentally, retaining the ability to do no more than uncomplicated sedentary-to-light work with only limited contact with the public, coworkers and supervisors. Tr. 15. Despite these limits, and in reliance on the testimony of a vocational expert, the ALJ found that Plaintiff was not disabled. Tr. 22.

      Noting that hearing officers are "not free to discount pain complaints simply because the alleged severity thereof is not corroborated by objective medical findings," Carbone, 1992 WL 75143, at *5, Plaintiff accurately recites the legal principle that an ALJ may not discount a claimant's subjective statement despite the absence of direct evidence to rebut them. Sacilowski v. Saul, 959 F.3d 431, 441 (1st Cir. 2020). She argues that the ALJ in this case committed error by ignoring the overwhelming evidence of the objective basis for the pain – "failed post

laminectomy syndrome/ failed back surgery syndrome," ECF No. 12 at 4 – and by failing properly to consider the Avery factors. Plaintiff offers her own analysis of the evidence bearing on each Avery factor to conclude that this error is material.

Plaintiff's Avery argument is unavailing. As his decision makes plain, the ALJ did not ignore but acknowledged Plaintiff's spinal fusion surgery in February 2018, including that, post-surgery, "imaging studies and physical examinations revealed normal findings to relatively modest abnormalities," but Plaintiff continued to have pain. Tr. 17. The ALJ acknowledged that Plaintiff exhibited decreased range of motion, tenderness, and an occasional positive straight leg raise, but also negative straight leg raise, intact motor strength and sensation, and normal or only slow or "mildly" antalgic gait, as Plaintiff's recovery continued. Id. The ALJ acknowledged Plaintiff's allegations of worsening back pain and addressed her progressing symptomology, including that ongoing back pain was aggravated by prolonged exertional activities, and that pain had not subsided despite multiple treatment options. Tr. 16-20. The ALJ acknowledged Plaintiff's claims of side effects from medications, which he accurately contrasted with her repeated reports of no side effects to the treating providers responsible for managing medication. Tr. 16-17; see, e.g., Tr. 603 ("patient reports taking their pain medication as prescribed with no significant side effects"). In short, Plaintiff's Avery argument fails because the ALJ did consider Plaintiff's pain as mandated by Avery. It is well settled that there is no need for an Avery remand when, as happened here, the ALJ did not place inappropriate weight on the lack of objective findings, but properly considered the evidence of record generally in conformance with the Avery factors. Nancy T., v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *4 (D.R.I. Mar. 7, 2022); see Crocker v. Astrue, No. 07-220-P-S, 2008 WL 2775980, at *6 (D. Me. June 30, 2008), adopted, 2008 WL 2875324 (D. Me. July 23, 2008) (administrative law judge need

not "slavishly discuss each Avery factor"); Blyther v. Chater, 931 F. Supp. 60, 66 (D. Mass. 1996) (despite lack of specific findings pertaining to Avery steps two through four, ALJ adequately considered record evidence regarding those steps in full conformance with Avery).

Plaintiff's secondary critique of the ALJ's approach to her subjective statements regarding pain is equally unfounded. Far from discounting Plaintiff's subjective statement despite the absence of direct evidence to rebut them in contravention of Sacilowski, 959 F.3d at 441, the ALJ performed a robust assessment of Plaintiff's subjective statements, for example noting the stark contrast between what she said during the hearing regarding pain medication side effects and what she told the treatment providers responsible for managing her pain medication about the side effects of the same medication. In compliance with Sacilowski, the ALJ's decision includes a symptom-by-symptom analysis of Plaintiff's subjective claims juxtaposed with the inconsistent notations by treating sources (with detailed citations to the record). Tr. 18; also compare Tr. 43 ("I spend most of my time in bed" because of "severe back pain"), with Tr. 342 (although Plaintiff reported that intensity of pain "did not decrease significantly," provider noted that, in conversation, she revealed that "she was out and about walking for 4 hours, doing shopping with her mother and was really quite functional"), and Tr. 380 (patient urged to exercise and wean off pain medication). Further, the ALJ appropriately considered that Plaintiff's mental symptoms were conservatively treated with counseling and medication, rather than with psychiatric hospitalizations. Tr. 18; see McNelley v. Colvin, No. 15-1871, 2016 WL 2941714, at *2 (1st Cir. Apr. 28, 2016) (conservative treatment with only medication management constituted substantial evidence that supported ALJ's decision). I find that the ALJ's reasons for discounting Plaintiff's subjective statements are well supported and entitled to the Court's deference.

Based on the foregoing, I find that the ALJ adequately considered Plaintiff's subjective statements of disabling pain by carefully and accurately considering medical and other evidence before resolving evidentiary conflicts and assessing an extremely restrictive RFC. The ALJ traced the development of Plaintiff's spinal pain, recognized that Plaintiff's surgery did not resolve her pain complaints but supportably found that the degree of her complaints was inconsistent with the record evidence. Therefore, I recommend that the ALJ's well-reasoned and adequately supported analysis should be upheld. See Frustaglia, 829 F.2d at 195.

### B. Plaintiff's Challenge to ALJ's Approach to Treating Source "Opinions"

Plaintiff relies on what she claims are two, possibly three, treating source opinions as to which the ALJ failed to articulate supportability and consistency as required by 20 C.F.R. § 404.1520c(b)(2).

The first is a letter from Plaintiff's treating psychiatrist, Dr. Fitzhugh, in which he noted that Plaintiff is "essentially house-bound, unable to perform even the smallest tasks without an exacerbation of the back pain which renders her useless" and is "chronically fatigued due to the side effects of the pain medicine"; he opines that the pain has had significant "emotional impact," causing depression and affecting her motivation, interests and ability to concentrate. Tr. 1025.

The ALJ's decision devotes considerable attention to Dr. Fitzhugh's treating records, Tr. 14-15, 18, and a full paragraph to his analysis of the persuasiveness of Dr. Fitzhugh's opinion letter. Tr. 20. Contrary to Plaintiff's contention, the ALJ specifically discusses both the supportability and consistency of the statements in the letter. In so doing, the ALJ appropriately found the Fitzhugh opinion to be unpersuasive because it lacks any specific work-related functional limitations. The ALJ also appropriately considered that Dr. Fitzhugh

provided solely psychiatric services, while the portion of his letter[3] that notes that Plaintiff is bedridden, "useless" and chronically fatigued by pain medication is based on the impact of physical limitations that he did not treat and pain medications that he did not prescribe. Further, as the ALJ found, this aspect of the letter is inconsistent with other treating records (for example, the notes of the providers who did prescribe the medication), and with Dr. Fitzhugh's own notes, which include inconsistent observations, such as "[d]oing not bad . . . Pt appears more comfortable" noted on September 17, 2019, "walking c mother" noted on April 28, 2020, "walking regularly c mother" noted on March 31, 2020, and the ability to attend a funeral noted on May 26, 2020. Tr. 760, 899, 900, 901. In short, Plaintiff's contention that the ALJ failed to discuss the supportability and consistency of the Fitzhugh letter as required by 20 C.F.R. § 404.1520c(b)(2) is unfounded. I find no error in the ALJ's approach to Dr. Fitzhugh's opinion.

Second is a letter written by Plaintiff's primary care physician, Dr. Kim Stein. Tr. 1022. Dated October 7, 2019, the letter indicates that, as of the date of the letter, Dr. Stein had had a brief treating relationship ("seen 2 times") with Plaintiff. She opines that Plaintiff "suffers from a medical condition," the nature of which is unspecified, "which has left her unable to work for greater than 1 year[] . . . and in the foreseeable future." Id. Without naming Dr. Stein expressly, the ALJ's decision describes his approach to the letter by stating that he is not "provid[ing] articulation about . . . statements on issues reserved to the Commissioner, or about other evidence that is inherently neither valuable nor persuasive in accordance with 20

---

[3] The portion of Dr. Fitzhugh's letter that addresses the emotional issues that he was treating opines only that they are "significant," and that Plaintiff's "concentration and motivation" are "impaired." Tr. 1025. As the ALJ noted in finding this aspect of the Fitzhugh opinion unpersuasive only to the extent that it "implies" restrictions more limiting than those found by the non-examining experts, Tr. 20, Dr. Fitzhugh's opinion on mental health issues does not appear to differ materially from the findings of the non-examining psychologists, who opined that chronic pain caused moderate limitations impacting the ability to interact with others, concentrate, persist and adapt and resulted in significant functional limitations. Tr. 63-67, 73-74.

12

CFR 404.1520b(c)." Tr. 20.  This is not error.  The ALJ's approach fully complies with the regulation he cites, which clearly permits an ALJ to articulate no analysis of a statement on issues reserved to the Commissioner, specifically a statement like that provided by Dr. Stein, which says no more than that the claimant is "not . . . able to work" due to an unspecified impairment that meets the Act's durational requirements.  20 C.F.R. § 404.1520b(c)(3)(i)(iii).

The third "opinion" on which Plaintiff may be relying is embedded in a note written by Dr. Eric Woodward, with whom Plaintiff had a single appointment on April 24, 2019, to perform a surgical evaluation.[4]  Tr. 554-55.  Dr. Woodward's note reflects that he listened to Plaintiff's complaint of "ongoing and incapacitating low back pain without leg pain," rated by Plaintiff as 7/10, with "significant negative impact on quality of life and functionality."  Tr. 555.  Dr. Woodward reviewed the most recent MRI and performed an examination that yielded normal findings, including that Plaintiff appeared to be in no acute distress.  Tr. 554-55.  He opined that Plaintiff's pain was likely caused by chronic internal neural scarring, which should be addressed by an "inteventional [sic] pain practitioner," and that "[s]he is not a candidate for any further standard surgery at this time."  Tr. 555.  Dr. Woodward made no statement regarding his opinion of functional limitations caused by Plaintiff's low back impairment.  Therefore, his note does not qualify as a "medical opinion" as defined by 20 C.F.R. § 404.1513(a)(2).  As such, it is not subject to the requirement of 20 C.F.R. § 404.1520c(a) that

---

[4] Plaintiff tucked her argument on Dr. Woodward's treating note into the paragraph discussing the Dr. Stein letter. ECF No. 12 at 7.  It appears simply to be included as an attempt to buttress the extremely skimpy opinion written by Dr. Stein; consistent with this interpretation of Plaintiff's somewhat confusing presentation, the Commissioner's memorandum in opposition does not separately address the Woodward note.  In an abundance of caution, the Court has examined the Woodward note as if Plaintiff had presented the ALJ's lack of reference to it as an independent flaw in the ALJ's decision.  For the reasons stated in the text, I find that the ALJ committed no error because the Woodward note is not a "medical opinion."

an ALJ must consider the persuasiveness of medical opinions and articulate an analysis. Therefore, the ALJ did not err in failing to analyze its supportability and consistency.[5]

### IV.    Conclusion

Based on the foregoing analysis,[6] I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) be DENIED and Defendant's Motion to Affirm the Decision of the Commissioner (ECF No. 13) be GRANTED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 1, 2022

---

[5] Of note: the ALJ did not ignore Dr. Woodward's note.  To the contrary, it is cited at various points in the ALJ's decision.  Tr. 14-15, 17-18.  He simply did not analyze it as a "medical opinion" because it is not, as the term is defined in the applicable regulation.

[6] I note that I have not addressed two additional arguments that Plaintiff tosses in but has failed to develop.  First, she contends that remand is required to develop the record because, "[r]egarding her *mental* health impairments, many of the records are illegible."  ECF No. 12 at 8.  Plaintiff does not specify what records she means.  While the Court may speculate that she refers to some of Dr. Fitzhugh's handwritten notes (which are challenging but certainly not impossible to read), Plaintiff provides no explanation why this is a material error requiring remand, particularly where there is a plethora of other mental health evidence and the non-examining psychologists opined consistently with the proposition (as expressed by Dr. Fitzhugh in his typed opinion) that Plaintiff was significantly impacted emotionally by pain.  Second, Plaintiff argues in passing (with no development of what was overlooked and why it undermines the substantiality of the evidence the ALJ did consider) that the ALJ's decision improperly cherry-picked favorable evidence.  ECF No. 12 at 9.  Both of these undeveloped arguments are deemed waived.  Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *4 n.4 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021) (when claimant presents no argument to support proposition that ALJ's finding is tainted by error, Court cannot speculate what she intended; contention deemed waived); Melissa G. v. Kijakazi, C.A. No. 20-00367-WES, 2021 WL 3124228, at *8 (D.R.I. July 23, 2021) (arguments that are not developed or supported in opening brief as required by court's scheduling order "are clearly throw-in arguments left for the [c]ourt to sort out on its own and, as such, are deemed waived") (citing Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 6 (1st Cir. 2005)).